LEVINE SULLIVAN KOCH & SCHULZ, L.L.P.
230 Park Avenue, Suite 1160
New York, NY 10169
(212) 850-6100
David A. Schulz
Ashley I. Kissinger

THE ASSOCIATED PRESS
450 West 33rd Street
New York, NY 10001
(212) 621-1796
David H. Tomlin



**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

---

| | |
|---|---|
| **ASSOCIATED PRESS,** X : | Index No._____ |
| 450 West 33rd Street : | |
| New York, NY 10001 : | |
| : | |
| **Plaintiff,** : | |
| : | |
| - against - : | **ECF CASE** |
| : | **COMPLAINT** |
| **UNITED STATES DEPARTMENT OF** : | |
| **JUSTICE, and its component, OFFICE OF** : | |
| **THE PARDON ATTORNEY,** : | |
| 950 Pennsylvania Avenue, NW : | |
| Washington, DC  20530-0001 : | |
| : | |
| 1425 New York Avenue, NW : | |
| Suite 1100 : | |
| Washington, DC  20530 : | |
| **Defendants.** : | |
| X | |

---

Plaintiff, The Associated Press ("AP"), by its undersigned attorneys, alleges:

## INTRODUCTION

1.    This is an action under the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552, *et seq.*, brought by the nation's largest newsgathering organization to compel access to all petitions for commutation submitted by John Walker Lindh and/or his attorneys to the Office of the Pardon Attorney of the Department of Justice. Obtaining copies of these petitions is a matter of immediate concern to the AP in connection with its continuing reporting on major domestic and foreign policy issues presented by the government's handling of the "war on terror," and particularly its treatment of people detained or convicted on terrorism-related charges or suspicions.

2.    John Phillip Walker Lindh is a 25-year-old American citizen who was captured on the battlefield in Afghanistan. He was originally indicted on eleven counts ranging from conspiracy to murder United States nationals to providing material support and resources to foreign terrorist organizations, including the Taliban and al Qaeda, the successful prosecution of which could have resulted in a life sentence. He is currently serving a 20-year prison sentence arising from his guilty plea on two of those counts.

3.    During Mr. Lindh's prosecution, reports surfaced that he had been physically abused while in United States custody in Afghanistan and that his confession may have been improperly coerced. Mr. Lindh formally asked the court to exclude his confession from evidence on the ground that it was unlawfully obtained. On the day scheduled for the court hearing on Mr. Lindh's request, Mr. Lindh instead accepted a plea bargain that required him to plead guilty to two counts of aiding the Taliban Army and carrying weapons while doing so, drop claims that he had been mistreated or tortured by U.S. military personnel, and

consent to a gag order preventing him from making any public statements on the matter for the duration of his twenty-year sentence.

4.     In September of 2004, Mr. Lindh submitted a petition for commutation of his sentence to the Office of the Pardon Attorney at the Department of Justice. He supplemented the petition in December 2005. On information and belief, Mr. Lindh contends in his petition that he was prosecuted and convicted unfairly in the immediate wake of the September 11, 2001 attacks, and that he was not, in fact, knowingly fighting the United States in Afghanistan.

5.     Through this lawsuit, AP seeks to compel to the Office of the Pardon Attorney ("OPA") in the Department of Justice ("DOJ") to produce copies of the petitions submitted by Mr. Lindh seeking a reduction in his sentence. In response to AP's FOIA request for these materials, the OPA and DOJ have refused to make any information available on the grounds that its release "could reasonably be expected to constitute an unwarranted invasion of the personal privacy" of Mr. Lindh.

6.     Given the significant public interest in understanding and resolving the questions concerning the propriety of the detentions, interrogations, prosecutions and convictions of foreign nationals and American citizens as part of the government's "war on terror," and more particularly the ongoing debate concerning John Walker Lindh's treatment by his captors and culpability for the crimes to which he pled guilty, AP seeks declaratory, injunctive and other relief to enforce its statutory right to inspect the documents submitted on behalf of Mr. Lindh in his petition for clemency.

7.     Due to restrictions currently imposed on Mr. Lindh by the Department of Justice, none of his representatives is permitted to make public his petitions for a reduction in

3

sentence. Absent relief from this Court, defendants will continue to keep these documents entirely secret. AP seeks expeditious treatment of this Complaint pursuant to 28 U.S.C. § 1657.

## THE PARTIES

8.    Plaintiff AP is a not-for-profit membership corporation organized under the laws of the State of New York, with its headquarters located at 450 West 33rd Street, New York, New York. AP provides news to more than 15,000 news outlets every day Its members and subscribers include this nation's newspapers, magazines, broadcasters, cable news services and Internet content providers.

9.    Defendant Department of Justice is a department within the executive branch of the United States government. Defendant Office of the Pardon Attorney is a component of DOJ that makes recommendations to the United States President concerning federal prisoners' petitions for clemency (including requests for full pardons as well as requests for commutation, or reduction, of sentences). Both defendants are agencies of the United States within the meaning of 5 U.S.C. § 552(f)(1).

## JURISDICTION AND VENUE

10.    This Court has subject matter jurisdiction over this action and personal jurisdiction over the defendant pursuant to 5 U.S.C. §§ 552(a)(4)(B) and 552(a)(6)(E)(iii). This Court also has jurisdiction over this action pursuant to 28 U.S.C. § 1331 and 5 U.S.C. §§ 701-06.

11.    Venue is premised on plaintiff's place of business and is proper in this district under 5 U.S.C. § 552(a)(4)(B).

4

## FACTS

### The Controversy Surrounding Lindh's Prosecution

12.     John Walker Lindh is an American citizen who grew up in the Washington,

D.C. area before moving with his parents to Marin County, California, when he was 10 years

old.  He told FBI interrogators that he became interested in Islam when he saw the movie

"Malcolm X" at age 12.  By the time he was 16 years old, he had converted from Catholicism

to Islam, and he traveled to Yemen a year later to study the religion.  From there, while still a

teenager, he moved to Pakistan before crossing the mountains into Afghanistan.

13.     Mr. Lindh was captured by the Northern Alliance in late November 2001 in

Afghanistan and taken to the Qala-i-Jangi prison fortress outside Mazar-i-Sharif.  There he

and other prisoners were interviewed by CIA officer Johnny Michael Spann, among others.

Just hours after Mr. Spann's interview with Mr. Lindh, a prison riot broke out killing several

people in the camp, including Mr. Spann, the first American killed in the war in Afghanistan.

14.     Mr. Lindh was removed from the Qala-i-Jangi prison shortly thereafter and

reportedly strapped naked to a stretcher by United States military personnel, blindfolded, and

placed in a metal shipping container for two days.  He ultimately gave a confession to his

interrogators.

15.     During his prosecution in the United States in 2002, Mr. Lindh claimed he had

been subjected to mistreatment and torture by United States military personnel while in

Afghanistan and that his confession was wrongfully coerced.  In June 2002, Mr. Lindh filed a

motion with the court to exclude from evidence statements he had made to his interrogators.

The government filed papers opposing Mr. Lindh's request on July 1, 2002.  On July 10,

2002, six international human rights organizations – Allard K. Lowenstein International

Human Rights Clinic, Center for Constitutional Rights, Center for Justice & Accountability, Extradition and Human Rights Committee of the American Branch of the International Law Association, Human Rights Advocates, and World Organization Against Torture USA – filed a Motion for Leave to File a Brief of Amici Curiae in support of Mr. Lindh's motion.

16.   On July 15, 2002, the date scheduled for the court hearing on his motion, Mr. Lindh instead entered into a plea agreement with the government on the two counts for which he is currently serving a twenty-year sentence in Victorville, California:  aiding the Taliban Army and carrying a weapon while doing so.  As part of the plea bargain, Mr. Lindh agreed to drop claims that he had been mistreated or tortured by U.S. military personnel, and consent to a gag order preventing him from making any public statements on the matter for the duration of his sentence.

17.   On October 4, 2002, Johnny Michael Spann's father spoke at Mr. Lindh's sentencing hearing.  Mr. Spann stated that Mr. Lindh played a role in his son's death and contended that a twenty-year sentence was too lenient.  Mr. Lindh responded in his own defense that he had no role in Mr. Spann's killing.  The court stated that it would not have accepted the plea bargain if there were sufficient evidence that Mr. Lindh had played a role in Mr. Spann's death.

18.   On September 28, 2004, Mr. Lindh's attorney, James Brosnahan, submitted a petition for reduction of Mr. Lindh's sentence to the OPA.  Over a year later, on December 19, 2005, Mr. Brosnahan submitted another such petition.

19.   On information and belief, the submission to the OPA contains Mr. Lindh's first-person account of facts he believes should cause President Bush to reduce his twenty-year prison sentence.

6

20.   Mr. Lindh's attorney has publicly drawn a comparison between Mr. Lindh's treatment and that of Yaser Hamdi, an American citizen he says was captured on the battlefield in Afghanistan at the same time and same place as Mr. Lindh but "was freed by the government after detaining him for less than three years." He has similarly drawn a comparison between Mr. Lindh and the more than 250 Guantanamo Bay detainees, many of whom were captured on the battlefield in Afghanistan, who have been released or transferred by the U.S. government without charge.

21.   On the date of Mr. Lindh's second petition to the OPA, December 19, 2005, a Department of Justice spokesman reportedly stated that the original petition is pending, that there was no need to renew the request, and that "it is rare for a petition for clemency to have any kind of a final resolution in a year's time." On January 19, 2006, another Justice Department spokesman reportedly confirmed that it would take at least a year to consider Mr. Lindh's request.

22.   On January 19, 2006, Mr. Lindh's father, Frank Lindh, spoke publicly about his son's prosecution and imprisonment after years of relative silence. In a lengthy address delivered to The Commonwealth Club of California, Mr. Lindh gave a detailed account of his son's travels to the Middle East, the historical context leading to his capture in Afghanistan, and his handling by his interrogators. On information and belief, Mr. Lindh stated that his son was "a decent an honorable young man embarked on a spiritual quest" who "never fought against America." He stated that his son was involved in the Afghan civil war, not a fight against the United States, when he joined the then-U.S.-backed Taliban Army to fight the Northern Alliance. He stated that "what happened unfortunately for John is that the United States made an abrupt change after the 9-11 attacks, . . . switch[ing] sides" from supporting

the Taliban to supporting the Northern Alliance, and that "John was on the ground there when that happened. He certainly didn't go to Afghanistan to do anything against America." He stated that his son thought he had been rescued by American forces until they began to torture him. Mr. Lindh called on President Bush to reduce his son's prison term, stating that his sentence was disproportionate to his crimes as a result of public passion and prejudice in the wake of the September 11 attacks.

23.    On information and belief, Mr. Lindh's attorney, James Brosnahan, has stated that Mr. Lindh never came into contact with U.S. troops prior to his capture, never fought against Americans and never participated in any terrorist activities against the United States or any other country.

24.    In the wake of Mr. Lindh's father's recent public statements, others have offered competing views of John Walker Lindh's culpability. One newspaper editorial, for example, observed that Mr. Lindh has "admitted to being happy about the fate of America on 9/11 and has rationalized the October 2000 attack on the USS Cole in Yemen, which left 17 U.S. sailors dead and 39 others injured." A lengthy account of Robert Young Pelton, a correspondent for CNN who was present at the Qala-i-Jangi prison and spoke with Mr. Lindh at that time, has been published of his involvement with Mr. Lindh, his belief that Mr. Lindh was well aware that he was fighting against the United States in Afghanistan, and his belief that Mr. Lindh's duplicity contributed to Johnny Michael Spann's death. Mr. Pelton's account also appears to suggest that Mr. Lindh was treated harshly by U.S. military personnel: "I know what happened to Lindh after" he left the detention camp "because I met some of the Marines that did it. He could have suffered much worse."

**AP's Efforts to Obtain Copies of Mr. Lindh's Petition for Commutation**

25.    On January 4, 2006, AP submitted a narrow, specific and particularized FOIA

request to OPA seeking:

> copies of petitions sent by John Phillip Walker Lindh, also known as
> Suleyman al-Faris, to the Justice Department's Office of the Pardon Attorney
> seeking a reduction in Mr. Lindh's 20-year prison sentence on charges he
> supplied services to the Taliban.  We understand that at least one such petition
> was received by your office as recently as December 2005.

(A true and correct copy of AP's request to OPA is annexed as Exhibit A.)

26.    AP noted in its request that Mr. Lindh's counsel, James Brosnahan, had

indicated to AP his approval of the release of Lindh's petition, but was unable to release it

himself under Special Administrative Measures imposed by the U.S. Bureau of Prisons.  Ex.

A at 1.

27.    In response to AP's FOIA request, by letter dated January 13, 2006 defendant

OPA acknowledged that:

> [O]n September 28, 2004, this office received a petition for commutation of
> sentence for Mr. Lindh from his attorney, James Brosnahan, and on December
> 19, 2005, Mr. Brosnahan submitted additional supplementary material in
> support of the petition.  Taken together, these two documents constitute Mr.
> Lindh's clemency petition, a total of 30 pages (excluding duplicate pages),
> which remains pending at this time.

(A true and correct copy of OPA's response to AP's request is annexed as Exhibit B.)  OPA

advised that, "[i]n accordance with this office's established policy, we must have Mr. Lindh's

prior written consent before releasing his clemency petition to a third-party." Ex. B at 1. "In

the absence of a written release," the OPA officer explained, "I have determined that these

records should be withheld in their entirety pursuant to Exemptions 6 and 7(C) of the FOIA,

which limit disclosure of information that could reasonably be expected to constitute an

unwarranted invasion of an individual's personal privacy." *Id.*

28.     On January 19, 2006, AP submitted to the Justice Department's Office of Information and Privacy its appeal of the denial of the FOIA request.  AP explained that Mr. Lindh, "known internationally as the so-called 'American Taliban,'" is a "high-profile public figure" whose "privacy interest in his petition is low to nonexistent." AP explained again that Mr. Brosnahan indicated to the AP he approves release of his client's petition but that he cannot do so under Special Administrative Measures imposed on Mr. Lindh by the U.S. Bureau of Prisons, "which prohibit Mr. Lindh from 'talking with, meeting with, corresponding with or otherwise communicating with any representative of the news media, in person, by telephone, by furnishing a recording message, through the mail, through his attorney, through a third party, or otherwise." (A true and correct copy of AP's administrative appeal is annexed as Exhibit C.)

29.     By letter dated January 27, 2006, the DOJ's Office of Information and Privacy responded to AP's administrative appeal, affirming the OPA's decision:

> The Office of the Pardon Attorney properly withheld thirty pages from you because they are protected from disclosure under the Freedom of Information Act pursuant to 5 U.S.C. § 552(b)(7)(C).  This provision concerns records or information compiled for law enforcement purposes, the release of which could reasonably be expected to constitute an unwarranted invasion of the personal privacy of third parties.  I have also determined that this material is not appropriate for discretionary release.

(A true and correct copy of this letter is annexed as Exhibit D.)

30.     AP has exhausted its administrative remedies.

### FIRST CAUSE OF ACTION
(Violation of FOIA for failure to make records available)

31.     AP repeats, realleges, and incorporates the allegations in the foregoing paragraphs as though fully set forth herein.

32.     Defendant's failure to make promptly available and to release the documents

requested by AP violates FOIA, 5 U.S.C. § 552(a)(3)(A).

## RELIEF REQUESTED

**WHEREFORE**, AP respectfully prays that this Court:

a.      Expedite consideration of this Complaint pursuant to 28 U.S.C. § 1657;

b.      Declare that the petitions submitted to the Office of the Pardon Attorney by
        Mr. Lindh and/or his attorney must be disclosed by defendants in their
        entirety;

c.      Enjoin defendants immediately and expeditiously to provide to AP  copies of
        the requested petitions for commutation;

d.      Award AP the costs of this proceeding, including reasonable attorneys' fees
        and costs; and

e.      Grant such other and further relief as the Court deems just and proper.

Dated:  March 6, 2006            Respectfully submitted,
        New York, New York

                                 LEVINE SULLIVAN KOCH & SCHULZ, L.L.P.


                                 By:
                                    David A. Schulz (DS-3180)
                                    Ashley I. Kissinger
                                    230 Park Avenue, Suite 1160
                                    New York, NY 10169
                                    t: (212) 850-6100
                                    f: (212) 850-6299

                                 David H. Tomlin
                                 The Associated Press
                                 450 West 33rd Street
                                 New York, NY 10001

                                 *Attorneys for The Associated Press*

# EXHIBIT A



**Associated Press**
Ted Bridis
Staff Writer

4 January 2006

Samuel T. Morison, Attorney Advisor
Office of the Pardon Attorney
4th Floor, 500 First Street, N.W.
Department of Justice
Washington, DC 20530-0001
(202) 616-6070

Dear Mr. Morison,

Under provisions of the Freedom of Information Act and under the Electronic Freedom
of Information Act, 5 U.S.C 552, and Justice Department Regulation 28 C.F.R. Part 16, I
am seeking copies of petitions sent by John Phillip Walker Lindh, also known as
Suleyman al-Faris, to the Justice Department's Office of the Pardon Attorney seeking a
reduction in Mr. Lindh's 20-year prison sentence on charges he supplied services to the
Taliban. We understand that at least one such petition was received by your office as
recently as December 2005.

Please consider this an expedited request under the FOIA as this information is sought to
advance news coverage on the subject of this administration's war against terrorism and
its treatment of people detained or convicted on terrorism-related charges, which is
topical and timely. I certify, as per DOJ Regulation 28 CFR Part 16.5, that the
information is urgently needed by The Associated Press, which is engaged in
disseminating information in order to inform the public concerning actual or alleged
federal government activity, namely U.S. policies toward such prisoners and detainees.
The AP is the world's largest news-gathering organization, with more than 1 billion
readers, listeners and viewers. Mr. Lindh's activities, including his subsequent conviction
and imprisonment, were closely followed internationally, and his unsuccessful efforts so
far to reduce his prison sentence have similarly generated international press coverage.

Mr. Lindh already has been afforded the right of civilian trial and is known
internationally as the so-called "American Taliban," making him a high-profile public
figure and diminishing his expectation of privacy under Exemption (b)(7)(c). See
*Common Cause v. National Archives & Records Service*, 628 F.2d 179, 184 (D.C. Cir.
1980); *Lamont v. Department of Justice*, 475 F. Supp. 761, 778 (S.D.N.Y. 1979). We
understand that Mr. Lindh's petition was drafted by his private counsel, James Brosnahan
of San Francisco, and submitted to the Office of the Pardon Attorney, and thus can not be
considered a communication to the media, which we understand to be prohibited under
Special Administrative Measures imposed on Mr. Lindh by the U.S. Bureau of Prisons.
Mr. Brosnahan has indicated to the AP he approves release of his client's petition but is
unable to do so himself under the Special Administrative Measures, as this could be
construed as an attempt by Mr. Lindh to communicate to the media through his attorney.

**2021 K St. NW, 6th Floor, Washington, DC 20006**
**(202) 776-9462 voice; (202) 263-8842 fax**

We do not seek particularly sensitive or personal information about Mr. Lindh from DOJ case files, merely a copy of his petition to the government citing circumstances he believes might mitigate his actions. This disclosure would serve the public interest by offering insights into the government's response to the behavior of one of the few Americans convicted of aiding the Taliban and by educating the public about the pardons process. Mr. Lindh's status as a public figure tips the (7)(c) balance in favor of disclosure. See *Fund for Constitutional Government v. National Archives & Records Service*, 656 F.2d 856, 866 (D.C. Cir. 1981).

Please release any information pursuant to my requests as it is received and/or reviewed by your office, rather than waiting to send me all the material I have requested.

If there are any fees for searching for, or copying, the records I have requested, please supply the records without informing me if the fees do not exceed $250.

As you know, the Act and DOJ Regulation 28 CFR Part 16.11 permits you to reduce or waive the fees when the release of the information is considered as "primarily benefiting the public" or "likely to contribute significantly to public understanding of the operations or activities of the government." I believe that this request fits that category and I therefore ask that you waive any fees.

If all or any part of this request is denied, please cite the specific exemption(s) that you think justifies your refusal to release the information and inform me of your agency's administrative appeal procedures available to me under the law. I would appreciate your handling this request as quickly as possible, and I look forward to hearing from you.

*Ted Bridis*

cc: Dave Tomlin, AP assistant general counsel

# EXHIBIT B



**U. S. Department of Justice**

Pardon Attorney

_Washington, D.C. 20530_

**JAN 1 3 2006**

Ted Bridis
Associated Press
2021 K St., NW, 6th Floor
Washington, DC  20006

      Re:    Freedom of Information Act Request
               Request No. 2006-07

Dear Mr. Bridis:

    This is in response to your letter dated January 4, 2006, requesting pursuant to the Freedom of Information Act ("FOIA"), 5 U.S.C. §§ 552 et seq., "copies of petitions sent by John Phillip Walker Lindh . . . to the . . . Office of the Pardon Attorney seeking a reduction in [his] 20-year prison sentence on charges he supplied services to the Taliban."

    For your information, on September 28, 2004, this office received a petition for commutation of sentence for Mr. Lindh from his attorney, James Brosnahan, and on December 19, 2005, Mr. Brosnahan submitted additional supplementary material in support of the petition. Taken together, these two documents constitute Mr. Lindh's clemency petition, a total of 30 pages (excluding duplicate pages), which remains pending at this time.

    In accordance with this office's established policy, we must have Mr. Lindh's prior written consent before releasing his clemency petition to a third-party. In the absence of a written release, I have determined that these records should be withheld in their entirety pursuant to Exemptions 6 and 7(C) of the FOIA, which limit the disclosure of information that could reasonably be expected to constitute an unwarranted invasion of an individual's personal privacy. _See Judicial Watch, Inc. v. U.S. Dep't of Justice_, 365 F.3d 1108, 1124-1126 (D.C. Cir. 2004).

    I am required to inform you that if you consider my response to be a denial of your request, you may appeal to the Co-Director, Office of Information and Privacy, FLAG Building, Suite 570, U.S. Department of Justice, Washington, DC 20530, within 60 days from the date of this letter. You envelope and letter should be clearly marked "Freedom of Information Act Appeal" or "Information Appeal." In the event that your appeal is unsuccessful, judicial review will thereafter be available to you in the federal district court in which you reside or have your

-2-

principal place of business, or in the District of Columbia, where the requested records are located.

Sincerely,

Roger C. Adams
Pardon Attorney

By:     Samuel T. Morison
        Attorney

# EXHIBIT C



**Associated Press**
Ted Bridis
Staff Writer

19 January 2006

Co-Director, Office of Information and Privacy
FLAG Building, Suite 570, U.S. Department of Justice
Washington, DC 20530

Dear Ms. or Sir,

This is an administrative appeal by The Associated Press over the Justice Department's
denial of our request for records under the Freedom of Information Act and under the
Electronic Freedom of Information Act, 5 U.S.C. § 552, and Justice Department
Regulation 28 C.F.R. § 16. Our request was assigned No. 2006-07. The Justice
Department has identified 30 pages responsive to our request.

In a request transmitted by fax on Jan. 4, 2006, to the Justice Department's Office of the
Pardon Attorney, the AP sought copies of petitions sent by John Phillip Walker Lindh,
also known as Suleyman al-Faris, to the pardon attorney office seeking a reduction in Mr.
Lindh's 20-year prison sentence on charges he supplied services to the Taliban.

The AP sought expedited processing of our request under the FOIA, as this information is
sought to advance news coverage on the subject of this administration's war against
terrorism and its treatment of people detained or convicted on terrorism-related charges,
which is topical and timely. The Justice Department responded on Jan. 13, 2006, within
10 calendar days as permitted for expedited processing under 28 C.F.R. § 16.5.

The pardon attorney's office said that, in absence of a written consent by Mr. Lindh, it
determined the records should be withheld pursuant to Exemptions 6 and 7(c).

Mr. Lindh already has been afforded the right of civilian trial and is known
internationally as the so-called "American Taliban," making him a high-profile public
figure and diminishing his expectation of privacy under Exemptions 6 and (7)(c). See
*Common Cause v. National Archives & Records Service*, 628 F.2d 179, 184 (D.C. Cir.
1980); *Lamont v. Department of Justice*, 475 F. Supp. 761, 778 (S.D.N.Y. 1979). Mr.
Lindh's privacy interest in his petition is low to nonexistent. His private counsel, James
Brosnahan of San Francisco, has indicated to the AP he approves release of his client's
petition but is unable to do so himself under Special Administrative Measures imposed
on Mr. Lindh by the U.S. Bureau of Prisons, which prohibit Mr. Lindh from "talking
with, meeting with, corresponding with or otherwise communicating with any
representative of the news media, in person, by telephone, by furnishing a recording
message, through the mail, through his attorney, through a third party, or otherwise."

We do not seek particularly sensitive or personal information about Mr. Lindh from DOJ
case files, merely a copy of his petition to the government citing circumstances he

**2021 K St. NW, 6th Floor, Washington, DC 20006**
**(202) 776-9462 voice; (202) 263-8842 fax**

believes might mitigate his actions. This disclosure would serve the public interest by offering insights into the government's response to the behavior of one of the few Americans convicted of aiding the Taliban and by educating the public about the pardons process, "shedding light on an agency's performance of its statutory duties." It would be impossible for the public to judge the agency's conduct in responding to the petition, which was initially received in September 2004, without knowing what was in the petition. Mr. Lindh's status as a public figure tips the (7)(c) balance in favor of disclosure. See *Department of Justice v. Reporters Committee for Freedom of the Press*, 109 S. Ct. 1468 (1989), and *Fund for Constitutional Government v. National Archives & Records Service*, 656 F.2d 856, 866 (D.C. Cir. 1981).

Sincerely,

*Ted Bridis*

cc: Dave Tomlin, AP assistant general counsel

# EXHIBIT D

JUL-31-2002  03:28                                                                              P.02

**U.S. Department of Justice**

Office of Information and Privacy

_Telephone: (202) 514-3642_                    _Washington, D.C. 20530_

JAN 27 2006

David Tomlin, Esq.
Assistant General Counsel
Associated Press                           Re:    Appeal No. 06-1033
450 West 33rd Street                              Request No. 2006-07
New York, NY 10001                               MAP:JTR

Dear Mr. Tomlin:

     You appealed from the action of the Office of the Pardon Attorney on your request for
"any petitions for a sentence reduction received by the Office of the Pardon Attorney from John
Phillip Walker Lindh."

     After carefully considering your appeal, I have decided to affirm the Office of the Pardon
Attorney's action on your request.

     The Office of the Pardon Attorney properly withheld thirty pages from you because they
are protected from disclosure under the Freedom of Information Act pursuant to 5 U.S.C. §
552(b)(7)(C). This provision concerns records or information compiled for law enforcement
purposes, the release of which could reasonably be expected to constitute an unwarranted
invasion of the personal privacy of third parties. I have also determined that this material is not
appropriate for discretionary release.

     If you are dissatisfied with my action on your appeal, you may seek judicial review in
accordance with 5 U.S.C. § 552(a)(4)(B).

                            Sincerely,

                            Melanie Ann Pustay

                            Melanie Ann Pustay
                            Deputy Director